UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE ONEAL USHER, | Civil No. 14cv2938 JAH(BGS) |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT** |
| WHITE COMMUNICATIONS, LLC, et al., | |
| Defendants. | |

## INTRODUCTION

Pending before the Court is the motion to remand filed by Plaintiff Jackie O'Neal Usher, on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), and the motion to dismiss filed by Defendants White Communications, LLC, DirecTV(CA), Corp,[1] and Does 1 through 300, inclusive (collectively, "Defendants"). The motions have been fully briefed by the parties. After a thorough review of the pleadings presented, and for the reasons set forth below, this Court **GRANTS** Plaintiffs' motion and **DENIES** Defendants' motion as moot.

## BACKGROUND

Plaintiffs filed the instant wage and hour class action complaint against Defendants

---

[1] Defendants assert that the true name of Defendant is DirectTV, LLC, and it was erroneously sued as DirecTV(CA), Corp.

on November 20, 2014 in the Superior Court of San Diego. See Doc. No. 1. In the complaint, Plaintiffs allege they were misclassified as independent contractors and, on that basis, asserts seven causes of action: (1) failure to pay for all time worked and overtime worked (Cal. Lab. Code §§ 204, 510, 1194, 1198); (2) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512); (3) failure to provide rest breaks (Cal. Lab. Code § 226.7); (4) illegal wage deductions (Cal. Lab. Code § 221); (5) failure to timely pay all wages at termination (Cal. Lab. Code §§ 201-203); (6) failure to provide accurate itemized wage statements (Cal. Lab. Code §§ 226, 1174-1175); and (7) unfair business practices (Cal. Bus. & Prof. Code §§ 17200 et seq.). See Doc. No. 1. Defendants removed the action to this Court on December 12, 2014.

Defendants filed a motion to dismiss the action on the grounds of *forum non conveniens* on December 19, 2014. See Doc. No. 3. Plaintiffs filed an opposition on February 23, 2015 and Defendants filed a reply on March 2, 2015. See Doc. Nos. 9, 10.

Plaintiffs filed their motion to remand on January 6, 2015. See Doc. No. 4. Defendants filed an opposition and Plaintiffs filed a reply brief soon thereafter. See Doc. Nos. 5, 6. On February 4, 2015, Plaintiffs' motion was taken under submission without oral argument. See CivLR 7.1(d.1). On February 13, 2015, Defendants filed an *ex parte* application to permit oral argument on Plaintiffs' motion to remand. See Doc. No. 8.[2]

## DISCUSSION

I. **Motion to Remand**

A. **Legal Standard**

The federal court is one of limited jurisdiction. See Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. Steel Co. v. Citizens for a Better Environ., 118 S.Ct. 1003, 1012 (1998). "Jurisdiction is power to declare the law,

---

[2] This Court found the motion suitable for disposition without oral argument (see doc. no. 7) and finds no reason to revisit that finding. Defendants' motion is DENIED.

and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Id. (quoting Ex parte McCardle, 74 U.S. 506, 614 (1868)).

Removal jurisdiction is governed by 28 U.S.C. § 1441 *et seq*. A state court action can only be removed if it could have originally been brought in federal court. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Defendants removed this action to this Court contending removal is proper under the Class Action Fairness Act of 2005 ("CAFA"). See Doc. No. 1, Notice of Removal ¶4 (citing 28 U.S.C. §§ 1332(d)). CAFA's primary objective is to ensure Federal court consideration of interstate cases of national importance. Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1350 (2013). Under CAFA, original federal jurisdiction is established over class action lawsuits where (1) any member of the proposed plaintiff class is a citizen of a state different from any defendant; (2) the proposed class consists of more than 100 members; and (3) the aggregated amount in controversy exceed $5,000,000 exclusive of interest and costs. See 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1332(d)(6).

A defendant seeking removal of a putative class action must file a notice of removal, which includes a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. 28 U.S.C. § 1446; Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). Evidence establishing the amount in controversy exceeds $5,000,000 is required only when defendant's assertion of the amount in controversy is contested by plaintiffs. Dart, 135 S.Ct. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554 (citing 28 U.S.C. § 1446(c)(2)(B)); see Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (evidence may include affidavits, declarations, "or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal.") (internal quotations omitted) (citation omitted).

"[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Ibarra, 775 F.3d at 1197. "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

**B.   Analysis**

Plaintiffs contend that Defendants have failed to meet its burden of demonstrating the amount in controversy exceeds $5,000,000[3] and that public policy weighs in favor of remand.[4] Defendants oppose the motion and assert they provide specific calculations of the damages in controversy. Defendants argue that in light of the allegations in the complaint, the amount of controversy clearly exceeds $5,000,000. In reply, Plaintiffs argue that Defendants failed to produce evidence in support of their allegations, Defendants' assumptions supporting their damage calculations are unreasonable, and Defendants misconstrue the law in an attempt to inflate their damage calculations.

In determining the amount in controversy, courts first look to the sum claimed by plaintiffs in the complaint. See Ibarra, 775 F.3d at 1197. But when plaintiffs' complaint is silent as to the amount in controversy, courts turn to the evidence submitted by both parties to determine by a preponderance of the evidence whether the amount of controversy exceeds $5,000,000. Id.

Here, Plaintiffs' complaint is silent as to the amount in controversy. In the complaint, Plaintiff Usher makes the following allegations with respect to his individual

---

[3] There is no dispute that Plaintiffs' claims are class claims, and that they would satisfy CAFA's numerosity and minimal diversity requirements. See § 1332(d)(2)(A)-(C), (d)(5)(B).

[4] In their motion, Plaintiffs also claimed that jurisdiction was improper because the case falls under the local controversy exception to CAFA. See Doc. No. 4-1 at 7. In opposition, Defendants argued that Plaintiffs have not met their burden of showing the local controversy exception applies. See Doc. No. 5 at 16. In reply, Plaintiffs agreed with Defendants and withdrew their argument. See Doc. No. 6 at 10. Accordingly, this Court will not address the argument here.

damages: Defendants did not compensate him for all hours worked from October 26, 2012 to August 28, 2014, he was paid per job as opposed to per hour, he earned on average $100 per job, and he earned on average between $250 and $275 per day. Compl. ¶¶31, 40, 42. Plaintiff Usher further alleges that with few exceptions he worked 7 days a week, averaging around 55-60 hours per week. Compl. ¶¶33-34. Based on these allegations, Defendants computed Plaintiff Usher's hourly pay as $22.72 by dividing his total weekly earnings by the total hours worked if Plaintiff Usher worked 55 hours over a 5-day work week.[5] See Doc. No. 11-12.

Plaintiff Usher also alleges that he was never paid for any overtime. Compl. ¶36. He alleges that he "often" worked 8-12 hours a day, and would "typically" work more than 8 hours per day three to four times a week and more than 10 hours per day two times a week. Compl. ¶¶33-34. Based on these allegations, Defendants computed the amount of damages Plaintiff Usher is allegedly owed for overtime, including amounts owed for premium overtime for working seven consecutive days in one week. See Doc. No. 12-13.

Based on Plaintiff Usher's allegations that he never took rest periods and never took meal periods, including when he worked over 10 hours a day (compl. ¶¶37-38), Defendants calculated the amount of damages Plaintiff would be entitled to if he can establish his meal and rest period claims. See Doc. No. 13.

Following this method of calculating damages based on the allegations in the complaint, Defendants also calculated its alleged damages for illegal wage deductions, waiting time violations, and failure to provide accurate wage statements. See Doc. No. 5 at 13-15. Taken together, Defendants argue that Plaintiff Usher, individually, has placed $44,356.32 in controversy for a one year time period. See Doc. No. 5 at 15.[6]

---

[5] Although Plaintiff Usher alleges he worked 7 days a week, Defendants base their calculations upon a 5-day work week and in doing so argue that its calculations are a conservative estimate.

[6] Notably, in their reply, Plaintiffs' do not challenge or speak to the damages estimate as to Plaintiff Usher.

1        In determining the amount in controversy for the class members, Defendants cite
2 to a Declaration of Jeff White, Vice President of Operations for defendant White
3 Communications, LLC's. See Doc. No. 5 at 15.  In his declaration, Jeff White states that
4 during the claim period, defendant White Communications, LCC has contracted with a
5 total of 129 technicians and at any given time, approximately 32 technicians are employed
6 by defendant.  See Doc. No. 5-2 at 2, White Decl. ¶7.  Based on the allegations in the
7 complaint that state Plaintiff Usher's claims are "typical of the class," the putative class
8 members' duties were "similar and comparable," and the class was "subjected to identical
9 violations," (compl. ¶50) Defendants make the assumption that the other 129 technicians
10 have suffered identical yearly damages.  Adding in penalties for willful misclassification,
11 Defendants estimate the amount of damages for the class members total $6,322,608.80.
12        In reply, Plaintiffs argue that Defendants' damage calculation for the class members
13 is not based on reasonable assumptions because Defendants improperly assume "all class
14 members missed the same number of rest and meal periods, worked the same number of
15 overtime hours, had the same number of inaccurate wage statements, and had the same
16 number of waiting time penalties as Mr. Usher."  See Doc. No. 6 at 5-6.  Additionally,
17 Plaintiffs argue that Defendants do not provide evidence with respect to (1) the average
18 rate of pay for technicians; (2) the average number of regular hours worked by technicians;
19 (3) the average overtime hours worked by technicians; (4) the average daily earnings of
20 technicians; (5) the length of time that each technician worked; and (6) the number of
21 former versus current employees. Id. at 4.
22        The Court is not persuaded by Plaintiffs' contention that Defendants improperly
23 assumed a violation rate with respect to its unpaid overtime and rest period claims.
24 Contrary to Plaintiffs' assertion, Defendants need not necessarily provide evidence
25 regarding the term of months or years that each technician worked to calculate its alleged
26 violations.  For example, in calculating its alleged overtime damages, it is enough that
27 Defendants relied on Plaintiffs' complaint which alleged that service technicians typically
28

"worked 10 hours per day, and on average, worked more than 8 hours per day 3-4 times per week and more than 10 hours per day 2 times per week." See Compl. ¶34. Defendants have presented evidence that, at any given time, there are 32 technicians working in California. See Doc. No. 5-2 at 2, White Decl. ¶7. Because the complaint also alleges that the technicians were "never" paid for overtime wages (compl. ¶36), Defendants can reasonably calculate its alleged damages based on the fact that at any given time 32 technicians were not compensated for overtime 3-4 times per week when they worked more than 8 hours per day, and 2 times per week when they worked more than 10 hours per day. In this way, Defendants need not rely on the assumption that each of the alleged class members worked overtime for at least a one year period (like Plaintiff Usher), because it relies on the fact that it employed, on average, 32 technicians *at any given time*.

The same analysis applies equally to Defendants' calculations regarding missed rest periods. Plaintiffs allege that Defendants "never" permitted their employees to take rest periods. Compl. ¶39. Defendants can reasonably assume then, at any given time, 32 technicians did not receive any rest periods when they "worked 10 hours per day, and on average, worked more than 8 hours per day 3-4 times per week and more than 10 hours per day 2 times per week."

Although the Court concludes that the 100% violation rate used to calculate the alleged damages for the unpaid overtime and rest period claims is reasonable, the Court finds that the rate of pay Defendants used to calculate its alleged damages for the unpaid overtime and rest period claims is unreasonable. Defendants calculated the amount of its alleged damages for the unpaid overtime and rest period claims on the premise that class members made $250 per day, or $22.72 per hour. While the allegations in Plaintiffs' complaint make clear that Plaintiff Usher earns on average, $250 - $275 a day, or $22.72 per hour, the complaint is silent as to the earnings of the rest of the class members. Although the complaint alleges that class members were "subjected to identical violations" and have "similar and comparable" duties (compl. ¶50), Defendants have not presented evidence that similar duties equate to similar pay. Moreover, Defendants' have not

provided any "summary-judgment-type evidence" underlying their assumption that the earnings of putative class members were identical to Plaintiff Usher's earnings. Because Defendants' failed to provide evidence regarding the average rate of pay for its 129 technicians and because the complaint is silent to the issue, the Court finds that Defendants' assumption regarding the rate of pay is unreasonable.

Evidence of the rate of pay is particularly important here where class members are paid per job completed, rather than per hour. To assume that each technician receives similar rates of pay, also requires the unreasonable assumption that each technician is given and completes the same number of jobs per day. To the contrary, it is reasonable to assume that the average number of jobs a technician can complete on any given day varies depending on a technician's skill level and experience. While Defendants are entitled to rely on circumstantial evidence and make damage calculations based on reasonable assumptions, "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Ibarra, 775 F.3d at 1199. Accordingly, Defendants have failed to adequately support the asserted amount in controversy as to its overtime and rest period claims.

The Court also finds that Defendants failed to prove the amount in controversy as to the meal period claims. Defendants assume, without evidence, that all putative class members were denied a meal period every time they worked. While it is clear that Plaintiff Usher alleges he never received a meal period when he worked (compl. ¶37), the complaint is silent as to whether the other class members were similarly denied a meal period each and every time they worked. Likewise, the complaint alleges that class members would "invariably" miss a meal period if they were running late to a job (compl. ¶39), but not that class members ran late to a job on every assigned job. For these reasons, the complaint provides no basis for Defendants to assume a 100% violation rate for the class members' unpaid meal period claim.

Additionally, and as discussed above, Defendants have not shown that damages for missed meal periods should be calculated on the basis that class members received a

$22.72 hourly pay. The complaint and the record in this matter do not support such an assumption. Accordingly, the Count finds that the asserted amount in contoversy for the meal period claims, premised on a 100% violation rate and on a $22.72 hourly pay, is unsupported and unreasonable.

Similarly, the assumptions Defendants make regarding the rate of violations for its alleged failure to provide accurate wage statements is unreasonable. Defendants estimate that Plaintiff Usher would be entitled to $4,000 if he can prove his inaccurate wage statement claim, and assumes that each class member would be entitled to the same. See Doc. No. 5 at 10, 15. Here, the length of time each technician worked is necessary in order for Defendants to reasonably calculate the alleged damages for failure to provide accurate wage statements given that damages are assessed per violation and are at least $50 for the initial pay period in which a violation occurred, and $100 for each subsequent pay period violation, not to exceed $4,000 in aggregate. See Cal. Lab. Code § 226. Here, Plaintiffs allege that "each and every" wage statement provided to the class members was inaccurate. Compl. ¶36. While this allegation tends to show that there was at least one violation per class member, it does not establish that all class members worked enough pay periods to be entitled to the statutory cap of $4,000 in damages. And, as Defendants point out, the number of technicians working at any given time fluctuates depending on the needs of the company. See Doc. No. 5-2 at 2, White Decl. ¶7. Accordingly, the Court finds that Defendants failed to prove the amount in controversy as to the inaccurate wage statement claim.

Even though Plaintiffs have had an opportunity to submit proof of the amount of damages in controversy, Plaintiffs' failure to do so does not necessarily translate into the balance of proof tipping in Defendants' favor based upon Defendants' submittal of assumptions lacking evidentiary support. Dart, 135 S.Ct. at 554 (evidence establishing the amount of damages is required where defendant's assertion of the amount in controversy is contested by plaintiff); Ibarra, 775 F.3d at 1193 (same). At this stage of the proceeding, it would be inappropriate for the Court to expect that Plaintiffs could

provide more particularity to its allegations. The only reasonable assumption is that information to support Defendants' assumptions is within Defendants' control and at their fingertips. See, e.g., LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202-03 (9th Cir. 2015) (defendant's relied on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class). For these reasons, Defendants have not persuaded the Court that their estimate of damages for class members is a reasonable one. Accordingly, Plaintiffs' motion to remand this action to the state court is GRANTED.[7]

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to remand [doc. no. 4] is **GRANTED**;
2. Plaintiffs' *ex parte* motion to permit oral argument [doc. no. 8] is **DENIED**; and
3. Defendants' motion to dismiss for *forum non conveniens* [doc. no. 3] is **DENIED AS MOOT**.

Dated: September 30, 2015

_____
JOHN A. HOUSTON
United States District Judge

---

[7] Because this Court ultimately finds Defendants failed to establish the amount in controversy as to the class members, this Court does not address Plaintiffs' additional arguments regarding certain errors in Defendants' calculations and Plaintiffs' public policy arguments.